******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

CITY OF HARTFORD *v.* BRIAN MCKEEVER ET AL.
(SC 19099)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and Vertefeuille, Js.

*Argued March 26—officially released October 28, 2014*

*Christopher M. Reeves*, for the appellant (named defendant).

*Catharine H. Freeman*, assistant corporation counsel, for the appellee (plaintiff).

*Opinion*

VERTEFEUILLE, J. The primary issue that we must resolve in this certified appeal is whether the Appellate Court properly determined as a matter of law that the plaintiff, the city of Hartford, as assignee of the note and mortgage executed by the defendant Brian McKeever,[1] did not take the note and mortgage subject to the defendant's affirmative claims against the assignor, or, instead, the Appellate Court should have recognized and applied an equitable exception to this rule because the assignor or its predecessors had received overpayments on the note on the plaintiff's behalf. The plaintiff, as the assignee of a promissory note and mortgage executed by the defendant, brought an action to foreclose the mortgage. The defendant filed a five count counterclaim seeking, inter alia, an accounting of amounts paid pursuant to the note and recoupment of any excess amounts paid, including amounts that he had paid to the entity that had assigned the note and mortgage to the plaintiff and that entity's predecessors in interest. The trial court rendered judgment in favor of the defendant on his counterclaim and awarded him damages of $195,909. The plaintiff appealed from the judgment of the trial court to the Appellate Court, which reversed the judgment and remanded the case for further proceedings. *Hartford* v. *McKeever*, 139 Conn. App. 277, 288, 55 A.3d 787 (2012). We then granted the defendant's petition for certification to appeal to this court. *Hartford* v. *McKeever*, 307 Conn. 956, 59 A.3d 1191 (2013). The issue that we must address on appeal is whether the Appellate Court properly determined that the plaintiff, as the most recent assignee and current holder of the defendant's note, could not be held liable to repay the defendant for sums that were overpaid on the note before it was assigned to the plaintiff.[2] We answer this question in the affirmative and, therefore, affirm the judgment of the Appellate Court.

The opinion of the Appellate Court sets forth the following facts and procedural history. "In May, 1983, the defendant owned a building in Hartford, known as 206–208 Hamilton Street (property). The property contained multiple units that the defendant rented to tenants. On May 5, 1983, the defendant borrowed a total of $143,065 in two separate loans from the Community Development Corporation (corporation). In one loan transaction (loan one), the defendant and the corporation entered into a promissory note agreement with a principal amount of $28,879. In the other loan transaction (loan two), the defendant and the corporation entered into a promissory note agreement with a principal amount of $114,186. Each loan was secured by a separate mortgage on the property. At the time they entered into the loan agreements, the defendant and the corporation also entered into a separate agreement,

entitled 'Collateral Assignment of Leases and Rentals' (assignment of rents agreement), pursuant to which the corporation was empowered to collect rent directly from the defendant's tenants if he defaulted on his obligation to make payments on the notes.

"Although the corporation immediately assigned its interest in the notes to Colonial Bank, which later became State Street Bank & Trust Company of Connecticut (State Street Bank), the corporation continued to service the loans. In July, 2001, State Street Bank assigned loan two to the plaintiff for the sum of [$1]. By that time, the defendant had fully paid loan one, but the plaintiff determined that the defendant had defaulted on his payment obligations as to loan two. Accordingly, in 2003, the plaintiff brought an action against the defendant to foreclose on the property.

"On April 21, 2003, the defendant filed a five count counterclaim against the plaintiff, claiming: (1) violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.; (2) violation of the Connecticut Creditors' Collection Practices Act, General Statutes (Rev. to 1993) § 36-243a; (3) breach of the implied covenant of good faith and fair dealing; and (4) breach of a modification agreement previously agreed to by himself and the plaintiff. [The defendant] also sought, in the fifth count, an accounting as to all payments that his tenants had made under the assignment of rents agreement.

"The plaintiff subsequently withdrew its foreclosure complaint, conceding that the defendant had overpaid loan two by $17,397.93. Accordingly, [the plaintiff] offered to compensate [the defendant] in that amount. The defendant, however, declined the plaintiff's offer, electing instead to proceed to trial on his counterclaim to recover what he claimed to have been an overpayment of $195,909 on loan two. The plaintiff filed an answer to the counterclaim, denying its essential allegations, and pleaded as a special defense that CUTPA does not apply to municipalities.

"After a five day trial, the court issued a memorandum of decision in which it concluded that the plaintiff was liable to the defendant for the total amount he claimed to have overpaid on loan two to the plaintiff and all other prior holders of the note. The court therefore awarded him damages of $195,909, albeit without specifying the count of the counterclaim under which it made that award. . . . [A]pproximately eleven months after the court's November 9, 2010 decision, the plaintiff filed a motion for articulation, requesting for the first time that the court explain, inter alia, under which count of the counterclaim it had found in the defendant's favor. The court responded that, without having access to the court file, it was unable to identify the specific count of the counterclaim under which it had found in the defendant's favor."[3] (Footnotes omitted.) *Hartford* v.

*McKeever*, supra, 139 Conn. App. 280–82.

The plaintiff appealed to the Appellate Court claiming that the trial court incorrectly had concluded as a matter of law that, as an assignee, it was liable for the defendant's overpayments to the assignor, State Street Bank, or to any other prior holders of the note. Id., 282–83. The defendant contended that there was no need for the Appellate Court to consider whether, as a legal matter, an assignee can be held liable for the conduct of its assignor, "because the trial court found, as a factual matter, that the plaintiff was involved from the beginning and specifically that [the corporation] was acting, throughout the history of the loan, as an agent of Colonial Bank which in turn was the plaintiff's trustee."[4] *Hartford* v. *McKeever*, Conn. Appellate Court Records & Briefs, April Term, 2012, Defendant's Brief pp. 7–8. The defendant contended that the claim that the plaintiff had made in its brief that the corporation was not an agency of the plaintiff was contradicted by a deed of restrictive covenants that had been executed in connection with a regulatory agreement that the defendant entered into as a condition for receiving the loans, and that stated that the plaintiff "has adopted redevelopment plans . . . and has issued and sold [b]onds in the aggregate principal amount of $10,000,000 to provide loans for the financing of the rehabilitation . . . of certain residential real property within the geographical boundaries of the [c]ity of Hartford . . . ."[5]

A majority of the Appellate Court agreed with the plaintiff's legal claim. Accordingly, it reversed the judgment of the trial court and remanded the case for further proceedings. Judge Gruendel authored a dissenting opinion in which he contended that the court should "generally preclude affirmative claims against an assignee arising from the acts or liabilities of the assignor, while at the same time permitting equitable claims that merit exception therefrom." *Hartford* v. *McKeever*, supra, 139 Conn. App. 298. Judge Gruendel further argued that "[t]he present case is a quintessential example of the need for, and the appropriateness of, that exception. . . . [T]he plaintiff here was involved in the loan transactions from the beginning, as the trial court specifically found and as the plaintiff admitted in its answer." (Citation omitted.) Id., 303 (*Gruendel, J.*, dissenting). In support of this conclusion, Judge Gruendel pointed out that the plaintiff had admitted the portion of the defendant's counterclaim alleging that he had "executed two promissory notes to [the plaintiff] in exchange for [the] loans . . . ."[6] Id., 303 n.14. Judge Gruendel also contended that "the two promissory notes in question were assigned to the trustee bank the very day they were entered into, and thereafter were held at all times by the trustee bank on behalf of the plaintiff." Id., 303. In addition, Judge Gruendel pointed out that the plaintiff had admitted in its answer to the defendant's counterclaim that "the

rentals were being collected pursuant to a collateral assignment of leases and rentals. . . . [A] third party was collecting the rent *on behalf of* [*the plaintiff*]."[7] (Emphasis in original; internal quotation marks omitted.) Id., 305.

In response to Judge Gruendel's argument, the majority of the Appellate Court stated that "the trial court made no finding as to the making or significance of the [plaintiff's] alleged admission [that rents were collected on its behalf] and based no legal conclusion upon it. It is thus not within our power to consider the factual and legal ramifications of the admission on the issues before us . . . ."[8] Id., 283 n.7. The majority further stated that, "where the trial court expressly referred to the plaintiff as the assignee and to State Street Bank and its predecessors in title as the assignors of the subject notes and mortgages—without making any of the findings proposed by the dissent as to the supposed unity of interest between them—we cannot join the dissent in concluding that there was no distinction between the plaintiff, as assignee, and its assignor, or that the transfer of the notes and mortgages between them should be treated as something other than an assignment." Id.

On appeal to this court, the defendant does not challenge the Appellate Court's legal conclusion that, "[i]n the absence of an express contract provision, an assignee generally does not assume the original responsibilities of the assignor, but he or she may be liable for breach of the terms of the assignment or for his or her failure to perform obligations of the assignor which he or she has *assumed.*" (Emphasis in original; internal quotation marks omitted.) Id., 285, quoting 6A C.J.S. 511, Assignments § 115 (2004).[9] He claims, however, that this court should follow Judge Gruendel's approach and hold that this general rule should not be applied when it would be inequitable to do so. The defendant further contends that it would be inequitable to apply the rule in the present case because the trial court found that the plaintiff had been "involved from the very beginning."[10] Thus, the defendant implicitly contends that the judgment of the trial court was premised on a holding that the defendant was entitled to recover the full amount of the overpayments from the plaintiff because the corporation was acting as the plaintiff's agent and Colonial Bank and State Street Bank were acting as the plaintiff's trustees. The defendant further contends that the Appellate Court improperly placed the burden of providing an adequate record on appeal on the defendant, who was the appellee in the appeal to the Appellate Court, instead of on the plaintiff, as the appellant. We conclude that the trial court did not hold that the defendant was entitled to recover the full amount of the overpayment from the plaintiff because the corporation, Colonial Bank and State Street Bank were acting on the plaintiff's behalf. Rather, it con-

cluded as a matter of law that the plaintiff, as an assignee, was liable for any claims that the defendant had against the corporation and the banks, as assignors. We further conclude that, because the trial court had not addressed the claim that the defendant raised in the Appellate Court as an alternative ground for affirming the judgment, the Appellate Court was not required to review it.

We begin with the standard of review. The defendant's claim that the trial court held that the defendant was entitled to recover the full amount of the overpayments from the plaintiff because the corporation, Colonial Bank and State Street Bank were acting on its behalf requires us to interpret the judgment of the trial court. "The interpretation of a trial court's judgment presents a question of law over which our review is plenary. . . . As a general rule, judgments are to be construed in the same fashion as other written instruments. . . . The determinative factor is the intention of the court as gathered from all parts of the judgment. . . . The interpretation of a judgment may involve the circumstances surrounding the making of the judgment. . . . Effect must be given to that which is clearly implied as well as to that which is expressed. . . . The judgment should admit of a consistent construction as a whole." (Citation omitted; internal quotation marks omitted.) *Sosin* v. *Sosin*, 300 Conn. 205, 217–18, 14 A.3d 307 (2011).

In support of its legal conclusion that the defendant was entitled to recover the full amount that he overpaid on the note from the plaintiff, the trial court relied exclusively on cases and treatises addressing the scope of an obligor's right as a matter of law to recover from the obligee's assignee.[11] After citing these legal authorities, the court concluded that the plaintiff "taking the assignment under the obligations of its predecessors is liable to [the defendant] for the full $195,909 . . . ." The court also stated that the defendant had "proven that the [plaintiff] is liable for said overpayments by being an assignee of State Street Bank, which in turn was an assignee of [the corporation], and the [plaintiff] took the assignment with all of the obligations it and its predecessors had in these transactions." Although the trial court stated in the conclusion to its memorandum of decision that "it would be highly inequitable for the [plaintiff, the corporation] and/or State Street Bank to be unjustly enriched by mon[eys] paid by [the defendant] that were not in fact due," the court did not refer to any of the equitable principles relied on by Judge Gruendel in his dissenting opinion regarding the effect of a " 'close relationship and participation between the assignor and assignee' "; *Hartford* v. *McKeever*, supra, 139 Conn. App. 302; on the scope of an obligor's rights against the assignee.[12] See id. (*Gruendel, J.*, dissenting) ("[T]he 'close relationship and participation between the assignor and assignee put [the assignee] on notice

of the claims which might arise. Due to his knowledge and participation, [the assignee] was vulnerable to the [obligor's] counterclaim.' "), quoting *Massey-Ferguson Credit Corp.* v. *Brown*, 173 Mont. 253, 260–61, 567 P.2d 440 (1977). Accordingly, the most reasonable interpretation of the court's statement is that the court concluded that it would be inequitable to deny recovery of the full amount of the defendant's overpayments *regardless* of whether the plaintiff had such a close relationship with the corporation, Colonial Bank and State Street Bank that it was or should have been on notice of the defendant's overpayments when it executed the assignment in July, 2001. In other words, the court concluded that the law governing the scope of an obligor's rights against an assignee, as the court understood it, was supported by the principle that it is inequitable to prevent an obligor from recovering overpayments to an assignor from the assignee. It did not conclude that a close relationship between the assignor and the assignee supports an equitable claim that an assignee should be subject to affirmative claims based on the conduct of the assignor. We conclude, therefore, that the trial court did not hold that the defendant was entitled to recover the full amount of the overpayments from the plaintiff because the corporation, Colonial Bank and State Street Bank were acting on behalf of the plaintiff. Rather, it concluded that the plaintiff was liable to the defendant as a matter of law by virtue of its status as an assignee of the note and mortgage.

Indeed, neither the trial court nor the defendant has pointed to *any* evidence that (1) the plaintiff had any reason to know when it became the assignee of the note and mortgage that the defendant had overpaid the loan, or (2) the plaintiff was unjustly enriched by the overpayments.[13] The *only* evidence in the record regarding any benefit received by the plaintiff is the testimony of Arthur Greenblatt; see footnote 7 of this opinion; that the plaintiff's bondholders were paid with moneys paid on the defendant's loan, which was clearly contemplated by the regulatory agreement and related documents, such as the deed of restrictive covenants.[14] Although the trial court was entitled to discredit Greenblatt's testimony, it could not have concluded that the plaintiff was aware of or had benefited from the overpayments to its predecessors in the absence of any evidence to that effect.[15] *Builders Service Corp., Inc.* v. *Planning & Zoning Commission*, 208 Conn. 267, 293, 545 A.2d 530 (1988) ("a trier of fact cannot, from the disbelief of one party's testimony, infer that an opposing party's allegation, unsupported by any evidence, is correct"). Accordingly, even if the trial court had relied on the equitable principles that Judge Gruendel cited in his dissenting opinion; see *Hartford* v. *McKeever*, supra, 139 Conn. App. 303–305; any conclusion that those principles warrant an exception to the general rule that an assignee does not take an assignment subject to

affirmative claims against the assignor would find little, if any, support in the evidence or findings of the trial court. Accordingly, we conclude that the Appellate Court properly determined that the trial court had made no factual findings as to the significance of the relationship between the plaintiff, on the one hand, and the corporation, Colonial Bank and State Street Bank, on the other hand, and that the judgment of the trial court was not based on this relationship or any equitable considerations that flowed from it.

We therefore reject the defendant's claim that the Appellate Court improperly placed the burden of providing an adequate record on appeal on him instead of on the plaintiff. The judgment of the trial court was based solely on its conclusion that, as a matter of law, the defendant, as mortgagor, was entitled to assert any affirmative claims that he had against the corporation, Colonial Bank and State Street Bank against the plaintiff, as assignee of the note and mortgage, and that was the holding that the plaintiff successfully challenged on appeal to the Appellate Court.[16] The Appellate Court was not required to review an alternative ground for affirmance that the defendant had not distinctly raised and the trial court had not directly addressed, especially when the record was inadequate for review of the claim because the trial court had not made the requisite factual findings.[17] See *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, 311 Conn. 123, 164, 84 A.3d 840 (2014) (when appellant would be entitled to directed judgment upon prevailing on appeal, "the reviewing court may review an unpreserved, alternative ground for affirmance, or raise the issue sua sponte, only if the claim merits review under the plain error doctrine or [*State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989)], or under exceptional circumstances").[18]

Finally, we address the question of the proper disposition of this case. The Appellate Court concluded that the case must be remanded to the trial court, apparently for a determination of the amount owed by the plaintiff to the defendant, if any, in light of the Appellate Court's determination that the plaintiff was not liable for the overpayments to the corporation, Colonial Bank or State Street Bank. See *Hartford* v. *McKeever*, supra, 139 Conn. App. 287 n.10 ("[T]he [trial] court did not make a determination as to the value of the promissory note at the time that State Street Bank assigned it to the plaintiff. As such, setoff may be warranted."). Our review of the record reveals, however, that the trial court expressly found that the note had "been paid in full prior to the assignment" and that the amount of the overpayments that had been made to the plaintiff was $56,930. The trial court based these findings on the testimony of the defendant, which the court found credible. Indeed, even in the absence of this express finding, a finding that nothing was due on the note when

it was assigned to the plaintiff was implicit in the trial court's finding that the defendant had *overpaid* the loan *before* the assignment. Accordingly, we conclude that the Appellate Court's determination that the trial court had made no finding on this issue was incorrect.[19]

We note that on appeal to the Appellate Court, the plaintiff challenged this finding of the trial court on the ground that the trial court "did not rely on competent evidence from which [it] could determine the amount of debt because it relied on [the defendant's] self-serving documents . . . ." *Hartford* v. *McKeever*, Conn. Appellate Court Records & Briefs, supra, Plaintiff's Brief, Appendix A-5 p. 16. The plaintiff also contended that the defendant's testimony was "speculative" because it was not supported by "e-mails, faxes [or] charts that were exchanged between the parties." Id., Plaintiff's Reply Brief p. 3. Although the Appellate Court failed to address the plaintiff's claim that the trial court's finding was not supported by the evidence, we may do so.[20] See *State* v. *James*, 261 Conn. 395, 411, 802 A.2d 820 (2002) ("Normally, when we conclude that the Appellate Court has improperly failed to reach an issue concerning a decision by the trial court, we remand the case to that court for consideration of the merits of that issue. Under our supervisory powers over proceedings on appeal, however, this court also has the authority to address the subject of the trial court's decision." [Internal quotation marks omitted.]). We disagree with the plaintiff's claim. First, we are bound by the fact finder's credibility determinations. *State* v. *Gauthier*, 73 Conn. App. 781, 787, 809 A.2d 1132 (2002) ("[i]t is the [fact finder's] exclusive province to weigh the conflicting evidence and to determine the credibility of witnesses" [internal quotation marks omitted]), cert. denied, 262 Conn. 937, 815 A.2d 137 (2003). Second, the defendant testified that his calculations were based on printouts that the corporation had sent him purporting to show the payments that had been made against the loan. Indeed, the plaintiff ultimately conceded in its brief to the Appellate Court that the defendant's calculations as to the amounts that had been overpaid "could possibly have been used for a defense or setoff but not for a viable claim against the [plaintiff]."[21] *Hartford* v. *McKeever*, Conn. Appellate Court Records & Briefs, supra, Plaintiff's Brief, Appendix A-5 p. 17. Accordingly, there is no need for a remand to determine the amount owed by the plaintiff to the defendant.

The remaining issue is the defendant's claim for attorney's fees and interest. The defendant contends that, at trial, the trial court indicated that it would consider the issue of attorney's fees after it rendered its decision on the defendant's counterclaim provided that the defendant filed a request for attorney's fees within thirty days of the decision, and the plaintiff agreed with that procedure. The trial court rendered its decision on November 9, 2010, and on November 23, 2010, the defen-

dant filed: (1) a document captioned "motion for post-judgment interest" in which he stated that "[t]he defendant hereby moves for an [o]rder awarding post-judgment attorney's fees"; (2) a motion for attorney's fees; and a motion for clarification in which he asked the court to clarify its decision with regard to whether he was entitled to prejudgment interest. The trial court apparently never acted on these motions.[22] Accordingly, we conclude that the matter should be remanded for further proceedings on those issues.

The judgment of the Appellate Court is affirmed and the case is remanded to that court with direction to remand the case to the trial court for further proceedings consistent with the preceding paragraph.

In this opinion ROGERS, C. J., and ZARELLA, EVELEIGH and ESPINOSA, Js., concurred.

[1] Webster Bank, Helene Fishman, as trustee, and the Metropolitan District were also named as defendants, but they are not parties to this appeal. References herein to the defendant are to McKeever only.

[2] The issue on which we granted certification was: "Did the Appellate Court properly determine that the plaintiff, as the most recent assignee and current holder of the defendant's note, could not be held liable to repay the defendant for sums he overpaid on the note?" *Hartford* v. *McKeever*, supra, 307 Conn. 956. We have reframed the certified question to conform to the issue actually presented. See, e.g., *State* v. *Ouellette*, 295 Conn. 173, 184, 989 A.2d 1048 (2010) (court may reformulate certified question to conform to issue actually presented).

[3] The Appellate Court concluded that, because the plaintiff had not filed a motion for review of this articulation, its claim that the trial court improperly had failed to specify the basis for its award of damages was unreviewable. *Hartford* v. *McKeever*, supra, 139 Conn. App. 279 n.2. The plaintiff has not challenged this conclusion on appeal to this court.

[4] The trial court had concluded that "[the corporation] is apparently an agency of the [plaintiff], Colonial Bank which then became [State Street Bank] was acting as trustee for the [plaintiff], so throughout, [the plaintiff] had an interest in the very beginning and over the years in the execution and administration of the mortgages." The court cited no subordinate facts in support of this determination.

[5] It is unclear why the defendant believed that this language quoted from the deed of restrictive covenants showed that the corporation was an agency of the plaintiff. It is possible that he was contending that the language showed that the plaintiff had "provide[d] [the] loans" and, therefore, the corporation must have been acting on the plaintiff's behalf when it serviced the loans.

[6] The defendant alleged in his counterclaim that "[o]n or about May 5, 1983, the [defendant] executed two promissory notes to [the plaintiff] in exchange for loans of $114,186 and $28,879. Also on said date, the [defendant] executed a mortgage to the [plaintiff] to secure payment of said loans . . . ." The plaintiff admitted these allegations. The promissory note attached to the plaintiff's foreclosure complaint provides, however, that "FOR VALUE RECEIVED, the undersigned [defendant] . . . promises to pay to [the corporation] . . . the principal sum of ONE HUNDRED FOURTEEN THOUSAND ONE HUNDRED EIGHTY SIX (114,186.00) DOLLARS . . . ." The associated mortgage deed, also attached to the foreclosure complaint, provided that "[t]his MORTGAGE DEED [is] made this 5th day of May 1983, by and between [the defendant] . . . and [the corporation], a Delaware [c]orporation having its office and principal place of business at 928 Farmington Avenue, West Harford . . . ."

[7] After the Appellate Court had issued its decision reversing the trial court's judgment and we had granted the defendant's petition for certification to appeal from that decision, the defendant filed a motion for articulation in which he requested that the trial court articulate the basis for its finding that Colonial Bank was acting in its capacity as trustee for the plaintiff and that the plaintiff was involved in the matter "from the beginning." The trial court then issued an articulation in which it stated that "[f]rom testimony

and the mortgage documents, it is clear [the corporation] granted the original mortgages and assigned them to Colonial Bank which was trustee for the [plaintiff] . . . ." Specifically, the trial court had relied on the July 6, 2001 assignment from State Street Bank to the plaintiff, which stated that "STATE STREET BANK . . . as [t]rustee under the [t]rust [i]ndenture dated as of August 1, 1982 . . . by and among the [plaintiff], [a]cting [b]y and [t]hrough the [r]edevelopment [a]gency of the [plaintiff] (the '[i]ssuer') and the [t]rustee, in consideration of the sum of ONE DOLLAR . . . does hereby grant, bargain, sell, assign, transfer and set over to [the plaintiff], acting by and through the Hartford Economic Development Commission . . . all the right, title and interest of the [t]rustee in and to the [s]ervice [a]greement as amended and restated as of June 29, 1994 . . . among the [i]ssuer, the [corporation] . . . and the [t]rustee, the [r]ehabiltation [l]oans, the [a]uxiliary [l]oan [a]ccount [l]oans, the [l]oan [a]greements, the [m]ortgage [n]otes and the related [m]ortgages . . . ." In addition, the trial court stated that it had relied on the corporation's assignment of its interest in the notes and mortgages to Colonial Bank and on trial testimony by Arthur Greenblatt, a former employee of the corporation, that Colonial Bank had become State Street Bank. The plaintiff contends that we should not consider this articulation because it was untimely. We conclude that the articulation is irrelevant to our resolution of this appeal because, as we discuss later in this opinion, the fact that the plaintiff was involved "from the beginning" was not the basis for the trial court's judgment. Accordingly, we need not address the question of whether a trial court may issue an articulation on a decision after a reviewing court has issued its ruling on an appeal from the trial court's decision.

[8] Judge Gruendel stated in his dissenting opinion that "the plaintiff has not presented this court with an adequate record to determine the distinct legal basis of the [trial] court's decision"; *Hartford* v. *McKeever*, supra, 149 Conn. App. 306 n.18; but he concluded that the Appellate Court should "presume that the [trial] court properly considered the plaintiff's admission [that the overpayments were collected on its behalf] as conclusive on [the Appellate Court] . . . ." Id.

[9] See also *Standard Insulation & Window Co.* v. *Dorrell*, 309 S.W.2d 701, 704 (Mo. App. 1958) ("It is well settled that in an action by an assignee [against the obligor], a claim in favor of [the] defendant against the assignor can be allowed as a set-off, counterclaim, or reconvention only to the extent of the claim sued on, and judgment cannot be rendered against the assignee for the excess. [The] [d]efendant is entitled to use his claim defensively, and not offensively . . . ." [Internal quotation marks omitted.]).

The Appellate Court stated that, although this court "has recognized that the Uniform Commercial Code [UCC], General Statutes § 42a-1-101 et seq., is formally limited to transactions involving personal property, it has determined that the [UCC] may furnish a guide for the law governing real property mortgages. See *Olean* v. *Treglia*, 190 Conn. 756, 762, 463 A.2d 242 (1983)." *Hartford* v. *McKeever*, supra, 139 Conn. App. 285 n.8. Accordingly, the court relied on General Statutes § 42a-3-305, governing defenses and claims in recoupment, for guidance. Id. We note that, although a mortgage is not subject to the UCC, a promissory note that is secured by a mortgage is subject to the UCC if it meets the definition of a negotiable instrument set forth in General Statutes § 42a-3-104 (a), which provides that a writing may be a negotiable instrument if it (1) is payable to order or to bearer, (2) is payable on demand or at a definite time, and (3) contains an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges, and no other promise, order, obligation or power is given by the maker or drawer except as otherwise authorized. See *Lenares* v. *Miano*, 74 Conn. App. 324, 328 n.4, 811 A.2d 738 (2002). The note at issue in the present case is not a negotiable instrument because it is not made payable to order or to bearer. We agree with the Appellate Court that, even when not applicable on its terms, the UCC can provide guidance in a case such as the present one.

[10] In our opinion, both the defendant and the dissent place far too much emphasis on the trial court's vague finding that the plaintiff was "involved" with the financial transaction that gave rise to the defendant's claim.

[11] For example, the trial court relied on this court's decision in *Schoonmaker* v. *Lawrence Brunoli, Inc.*, 265 Conn. 210, 228, 828 A.2d 64 (2003), for the proposition that "[t]he assignee of a chose in action stands in the shoes of the assignor. . . . Indeed, [s]uccession by an assignee to exclusive ownership of all or part of the assignor's rights respecting the subject matter of the assignment, and a corresponding extinguishment of those rights in

the assignor, is precisely the effect of a valid assignment." (Citation omitted; internal quotation marks omitted.) The court concluded without any citation to authority that "[t]he same is also true as to the liabilities of an assignor."

[12] Similarly, although the trial court stated in its memorandum of decision that "Colonial Bank was acting as trustee for the [plaintiff] so [the plaintiff] was involved from the beginning" and, in a footnote, that "[i]t is interesting to note that [the corporation] is apparently an agency of the [plaintiff], Colonial Bank which then became State Street Bank . . . was acting as trustee for the [plaintiff], so throughout, the [plaintiff] had an interest from the very beginning and over the years in the execution and administration of the mortgages," these statements were essentially dicta. The court did not subject these findings to any legal analysis and did not rely on them to support its statement that it would be inequitable to deny recovery of the overpayments from the plaintiff.

[13] To the extent that the defendant and Judge Gruendel in his dissenting opinion contend that the plaintiff should be held vicariously liable for the conduct of the corporation, Colonial Bank and State Street Bank, because those entities were acting on the plaintiff's behalf, *regardless* of whether the plaintiff knew or had reason to know of the overpayments or benefited from them, they have cited no authority for that proposition. Rather, they rely exclusively on equitable principles. We cannot perceive, however, why it is more equitable to subject an innocent assignee to a loss than to subject the obligor to the loss, especially when, as here, there is evidence the obligor was on notice of the conduct by the assignor that caused the loss and there is no evidence that the assignee was on notice of such conduct. (The trial court found that the defendant had attempted repeatedly and unsuccessfully to obtain an accurate accounting from the corporation before the loan and mortgage were assigned to the plaintiff.) To the extent that the trial court or Judge Gruendel concluded that the corporation's knowledge could be imputed to the plaintiff because the corporation was an "agency" of the plaintiff, that conclusion is not supported by any evidence in the record or findings by the trial court. Rather, the corporation is consistently referred to in the various loan documents as a Delaware corporation with an office in West Hartford. Although we recognize that, if certain criteria are met, a private corporation may be treated as a governmental entity for certain purposes; see generally *Gordon* v. *H.N.S. Management Co.*, 272 Conn. 81, 98, 861 A.2d 1160 (2004) (identifying "criteria for determining whether a corporate entity is an arm of the state entitled to assert sovereign immunity as a defense"); the defendant makes no claim, and there is no evidence in the record or finding by the trial court, that the corporation meets these criteria. Finally, we note that nothing prevented the defendant from bringing a claim against the corporation, Colonial Bank or State Street Bank for overpayments that were made to them.

[14] Greenblatt testified that the plaintiff had issued $10,000,000 in bonds in 1982, the proceeds of which were delivered to Colonial Bank as trustee for the plaintiff. Those funds were used to finance the loans to the defendant. The deed of restrictive covenants provides that "[i]n order to induce the [plaintiff], through the [corporation] and the [t]rustee, to issue and sell [b]onds, in order to induce the [corporation] to originate and service the [r]ehabilitation [l]oans, and in order to induce [b]ondholders to purchase [b]onds, the [defendant] has read and understood and is willing to be bound by and comply with the terms and conditions of the [m]aster [d]eclaration . . . ."

Greenblatt also testified that, if the defendant had made all of his loan payments in a timely manner, the total repayment amount would have been $248,331.60, and the loan would have been paid in full after fifteen years. Because the defendant fell behind on his payments, however, he was ultimately required to pay much more over a much longer period. Greenblatt did not know precisely how much more the defendant was ultimately required to pay as the result of his default. The trial court ultimately found that Greenblatt was not a credible witness.

With respect to Judge Gruendel's argument in his dissenting opinion that the plaintiff had admitted that the corporation, Colonial Bank and State Street Bank had collected the amounts due on the loan on its behalf; see *Hartford* v. *McKeever*, supra, 139 Conn. App. 304; the fact that those entities may have used a portion of the loan payments to pay off the plaintiff's obligations to its bondholders does not necessarily mean that the entire amount of the loan payments was collected on the plaintiff's behalf or that the plaintiff actually benefited in any way from the *overpayments*. With respect to Judge Gruendel's argument that the plaintiff had admitted the

portion of the defendant's counterclaim alleging he had " 'executed two promissory notes to [the plaintiff] in exchange for [the] loans' "; id., 303 n.14; on the basis of the record before us, we can only state that this admission is inexplicable in light of the uncontroverted evidence that the promissory notes named the corporation as the payee. See footnote 6 of this opinion. Indeed, in his reply brief to the trial court, the defendant admitted that "the original loan was made . . . from [the corporation] to [the defendant]." Perhaps the plaintiff intended to admit that it now had the rights of a payee on the subject notes pursuant to the assignment. In any event, neither the trial court nor the defendant has relied on this admission.

The dissent contends that, to the contrary, "the [plaintiff's] admissions are not inexplicable. Indeed, the [plaintiff] *explained* them to this court at length at oral argument." (Emphasis in original.) Specifically, the dissent points out that counsel for the plaintiff stated at oral argument before this court that the corporation was the mortgage holder, that the plaintiff was legally obligated to retain a trustee to collect the money and that the trustee was doing so for the benefit of the plaintiff. Thus, the dissent appears to contend that counsel's representation to this court that the plaintiff was *legally prohibited* from taking promissory notes from persons like the defendant who received loans from the bond proceeds somehow explains the plaintiff's admission that the defendant executed the notes in favor of the plaintiff. We disagree. The plaintiff and its respective trustees are separate entities, and the nature of the legal relationship between the plaintiff and its trustees and the rights and obligations that flowed from that relationship were not litigated in the present case. Thus, nothing in the record supports the defendant's allegation that he executed the promissory notes in favor of the plaintiff or explains the plaintiff's admission of that allegation. Finally, we take issue with the dissent's statement that we have repeatedly asserted that the record is inadequate to review the defendant's claim that the corporation, Colonial Bank and State Street Bank were acting at all times on behalf of the plaintiff and for the benefit of the plaintiff. We have concluded only that the record is inadequate to determine (1) the legal ramifications of the fact that those entities, as trustees, were obligated to act on the plaintiff's behalf, and (2) whether the plaintiff *actually* benefited from the overpayments. See footnote 15 of this opinion.

[15] The dissent disagrees and would conclude that there is evidence that the plaintiff was unjustly enriched because the plaintiff "never has denied that the overpayments were collected by [its predecessors in interest] on its behalf, as required by law, and that the money went directly to the [plaintiff] and its bondholders. Indeed, during oral argument, counsel for the [plaintiff] stated that it would have been 'fatal' to the [plaintiff's] tax exempt bond program if the money had been used for any other purpose." The dissent further states in footnote 4 of its opinion that "the evidence adduced at trial establishes that the plaintiff benefited from its loan program and that it was equitably liable for the defendant's losses with respect thereto." The dissent does not indicate where in the record the plaintiff admitted that the money collected by its predecessors in interest "went directly to the [plaintiff] and its bondholders." The dissent also does not indicate where in the record the defendant articulated the theory underlying his equitable claim or presented evidence that "establishes" that the plaintiff was equitably liable for the defendant's overpayments. Presumably, however, the dissent is relying on the plaintiff's admission that the corporation, Colonial Bank and State Street Bank had all been acting on the plaintiff's behalf when collecting amounts due on the loans. See footnote 14 of this opinion. The fact that those entities were acting on the plaintiff's behalf in collecting the money does not necessarily mean, however, that the plaintiff actually received or benefited from the amounts that they collected. It is possible, for example, that the defendant was overcharged because one or more of those entities imposed and pocketed improper service charges on the defaulted loans. Indeed, Greenblatt testified at trial that the corporation had charged late fees on the loans and kept them. In any event, the defendant presented no evidence whatsoever that would support a finding that the overpayments made by the defendant before the mortgage was assigned to the plaintiff actually ended up in the plaintiff's coffers, and counsel for the plaintiff stated at trial that "[t]he [plaintiff] didn't lend any of the money. The [plaintiff] wasn't receiving any of the money. The [plaintiff] wasn't doing an accounting of the money. The [plaintiff] wasn't receiving Section 8 payments or anything. We were not involved. Technically, we are not involved . . . ." The dissent, Judge Gruendel, the trial court and the defendant also have not cited any authority for the proposition that a trust benefi-

ciary is deemed to have benefited from any action taken by the trustee in the name of the beneficiary that benefited the trustee—a question on which we express no opinion because it was not before the trial court and is not before us. Rather, the defendant's claim that the plaintiff was the actual party in interest, the trial court's statement that the plaintiff was "involved" from the beginning, and Judge Gruendel's conclusion that the plaintiff could be held liable on equitable principles appear to have been premised on the unfounded assumption that the overpayments *actually* inured to the plaintiff's benefit. See, e.g., *Hartford* v. *McKeever*, supra, 139 Conn. App. 304 (*Gruendel, J.*, dissenting) ("the plaintiff admitted that all overpayments giving rise to the defendant's counterclaim were collected on its behalf, and thus inured to its benefit").

The dissent states, however, that the plaintiff has never claimed that "the trial court incorrectly had concluded or failed to address [in its memorandum of decision the plaintiff's] claim that it was not liable for overpayments collected by the trustee . . . ." See footnote 4 of the dissenting opinion. The plaintiff had no reason to raise such a defense in its posttrial brief, however, *because the defendant has never claimed that the plaintiff was liable for the overpayments as a trust beneficiary.* Indeed, when the plaintiff argued at trial that "the trustee bears full liability . . . [and the] beneficiary doesn't bear liability if the loan is somehow mismanaged," the trial court stated that it was "not questioning the [loan] to Colonial [Bank] as [t]rustee. I understand you're the beneficiary." Similarly, the court later stated, "I understand on Colonial [Bank] where the beneficiary is not liable." Thus, the court agreed with the plaintiff's position. Presumably, the defendant declined to make a claim in his posttrial brief, or anywhere else, that the plaintiff was vicariously liable as a trust beneficiary for the mismanagement of the loans by the corporation, Colonial Bank and/or State Street Bank because he agreed with the plaintiff and the trial court that that was not the case. Indeed, the only comment that counsel for the defendant made in response to the plaintiff's argument at trial that it was not liable as a trust beneficiary was, "I would think the trustee is [the plaintiff's] agent." The defendant never briefed the claim, however, that the plaintiff was liable as a principal for its agents' mismanagement of the loans. Accordingly, the dissent's argument that the trial court's statement that the plaintiff had not proven any of its defenses somehow applied to the plaintiff's unopposed argument during trial that it was not liable as a trust beneficiary is simply untenable. There was absolutely no reason for the trial court to conclude that the plaintiff had not proven a defense to a claim that *the defendant had never raised.*

[16] As we have indicated, the defendant does not challenge on appeal to this court the Appellate Court's conclusion that, as a matter of law, an assignee does not take an assignment subject to affirmative claims against the assignor arising from the assignor's prior conduct without express assumption of such liability by the assignee. See *Hartford* v. *McKeever*, supra, 139 Conn. App. 286.

[17] The defendant claimed in his posttrial brief to the trial court that the plaintiff "was involved in this [t]rust [i]ndenture even before the loan to [the defendant] was made," but he did not contend that the plaintiff was aware of or benefited from the overpayments to the corporation, Colonial Bank or State Street Bank. Nor did the defendant cite any of the cases or equitable principles that Judge Gruendel relied on in his dissenting opinion.

The dissent contends that "[t]he trial court's finding that the [plaintiff] was involved in the transactions from the beginning is obviously responsive to this contention" by the defendant. Even if that were the case, it is reasonable to conclude that the trial court declined to issue a ruling on the defendant's claim that the plaintiff was liable for the overpayments because it was the actual party in interest because the defendant failed to brief it adequately. For the reasons that we have explained, even if the plaintiff was involved in the transaction from the beginning, and even if the corporation, Colonial Bank and State Street Bank were acting on the plaintiff's behalf, those facts, standing alone, would not support the conclusion that the plaintiff is liable to the defendant for the overpayments in the absence of any legal analysis of those facts, which the defendant did not provide.

[18] In the present case, although, as we discuss later in this opinion, there will be further proceedings on the defendant's claim for attorney's fees and interest, there will be no further proceedings on the defendant's claim that he is entitled to recover from the plaintiff overpayments that were made to the corporation, Colonial Bank or State Street Bank.

[19] We recognize that on appeal to this court the defendant did not challenge

the Appellate Court's determination that the trial court had made no finding as to the amount owing on the note when it was assigned to the plaintiff. It was not entirely clear from the Appellate Court's opinion, however, why the court was remanding the case to the trial court for further proceedings. Moreover, the Appellate Court gave no indication that it had considered and agreed with the plaintiff's claim that the trial court's determination that the defendant had overpaid $195,909 on the note was not supported by the evidence. Rather, the Appellate Court stated that the trial court "did not make a determination" on that issue. *Hartford* v. *McKeever*, supra, 139 Conn App. 287 n.10. Thus, it appears that the Appellate Court simply overlooked the trial court's statement that the note had been paid in full. Indeed, if the Appellate Court had determined that the trial court's finding was not supported by the evidence, the proper disposition would have been to remand the case for a new trial, not further proceedings, as the questions of whether the defendant had overpaid the note and, if so, by how much, were the very issues that had been tried.

[20] The plaintiff did not file a cross appeal raising the claim that the Appellate Court had failed to address its evidentiary claim, presumably because it believed that the Appellate Court had concluded that a new determination of the amount that the defendant had overpaid must be made on remand. As we have indicated, to the extent that the Appellate Court made such a determination, it was based on an incorrect belief that the trial court had not already made a finding as to the amount due on the note when it was assigned to the plaintiff. See footnote 19 of this opinion. Although the plaintiff did not file a cross appeal, it has effectively renewed its insufficiency of the evidence claim on appeal to this court, acknowledging in its brief that it owes $17,397.93 in overpayments to the defendant, but claiming it is not responsible for any excess sum based on the defendant's calculations. We conclude that we may address the claim because, even if it was not properly raised, the plaintiff cannot prevail. See *Blumberg Associates Worldwide, Inc.* v. *Brown & Brown of Connecticut, Inc.*, supra, 311 Conn. 157–58 ("[r]eview of an unpreserved claim may be appropriate . . . when the minimal requirements for review are met and . . . the party who raised the unpreserved claim cannot prevail" [citation omitted; emphasis omitted]).

[21] In other words, the plaintiff effectively conceded that the real issue was not the competence or sufficiency of the defendant's evidence on damages, but, rather, whether the trial court properly had concluded that the defendant could recover from the plaintiff overpayments that had been made to the corporation, Colonial Bank or State Street Bank.

[22] The plaintiff contends that the defendant has waived these claims because the trial court's failure to act on these motions was the effective equivalent of a denial, and the defendant failed to file a motion for review. In support of this claim, the plaintiff relies on the Appellate Court's statement that the trial court's "inability to respond to the plaintiff's articulation request was the functional equivalent of a denial of the motion"; *Hartford* v. *McKeever*, supra, 139 Conn. App. 279 n.2; and the Appellate Court's conclusion that the plaintiff's claim that the basis for the trial court's opinion was unclear could not be reviewed on direct appeal, but only pursuant to a motion for review filed pursuant to Practice Book § 66-7. Id. Nothing in § 66-7, however, authorizes, much less requires, a party to seek review of a denial of a motion for interest or attorney's fees by way of a motion for review. Moreover, the plaintiff has provided no authority for the proposition that the unexplained failure of the trial court to rule on a request for attorney's fees or interest constitutes a denial as a matter of law. Cf. *Ahneman* v. *Ahneman*, 243 Conn. 471, 478–80, 706 A.2d 960 (1998) (affirmative refusal to consider posttrial motions constitutes functional equivalent of denial for purposes of establishing appellate jurisdiction). In the present case, we have no way of knowing whether the trial court intended to deny the defendant's motions, inadvertently overlooked them, or intended to wait until this appeal was finally resolved to address them.